UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JEREMIAS V. GOMEZ,

       Petitioner,

v.                      Case No: 2:16-cv-17-FtM-29CM

FLORIDA ATTORNEY GENERAL,

       Respondent.[1]

---

## OPINION AND ORDER

This matter comes before the Court on an amended petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Jeremias V. Gomez ("Petitioner" or "Gomez"), a prisoner of the Florida Department of Corrections (Doc. 13, filed February 16, 2016). Gomez, proceeding pro se, attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Collier County, Florida for two counts of capital sexual battery. Id. Respondent filed a response to the petition (Doc. 16). Gomez filed a reply (Doc. 24), and the matter is now ripe for review.

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004 )(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied. Because the petition is resolved on the record, an evidentiary hearing is not warranted. See <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I. Background

On March 10, 2009, the State of Florida charged Gomez by information with two counts of sexual battery on a child less than twelve years old, in violation of Florida Statute § 794.011(2) (Ex. 1).[2] After a three-day trial (Ex. 2), the jury convicted him as charged (Ex. 3). Gomez was sentenced to life in prison without the possibility of parole on each count (Ex. 4). Florida's Second District Court of Appeal affirmed the convictions and sentences without a written opinion (Ex. 7); <u>Gomez v. State</u>, 104 So. 3d 1095 (Fla. 2d DCA 2012).

On November 21, 2013, Gomez filed a state petition for writ of habeas corpus, alleging ineffective assistance of appellate counsel (Ex. 10). The petition was dismissed (Ex. 11); <u>Gomez v. State</u>, 149 So. 3d 12 (Fla. 2d DCA 2014).

---

[2] Unless otherwise indicated, citations to exhibits and appendices are to those filed by Respondent on August 1, 2016 (Doc. 17). The trial transcript, located in Exhibit Two, will be cited as (T. at ___).

On March 3, 2014, Gomez filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion"), raising a single claim of ineffective assistance of trial counsel (Ex. 12). The motion was denied (Ex. 15). The denial was affirmed by Florida's Second District Court of Appeal (Ex. 16); Gomez v. State, 182 So. 3d 647 (Fla. 2d DCA 2015).

## II. Legal Standards

### a. The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall,

592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Notably, even when the opinion of a lower state post-conviction court contains flawed reasoning, the federal court must give the last state court to adjudicate the prisoner's claim on

the merits "the benefit of the doubt." <u>Wilson v. Warden, Ga.</u> <u>Diagnostic Prison</u>, 834 F.3d 1227, 1235 (11th Cir. 2016), <u>cert granted Wilson v. Sellers</u>, 137 S. Ct. 1203 (Feb. 27, 2017). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008). Therefore, to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state post-conviction court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal court is not limited to assessing the reasoning of the lower court. <u>Wilson</u>, 834 F.3d at 1239.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15-16 (2013) (same).

### b.    Ineffective Assistance of Counsel

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. <u>Id.</u>  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. <u>Burt</u>, 134 S. Ct. at 13 (citing <u>Cullen v. Pinholster</u>, 563 U.S. 170 (2011)).

The focus of inquiry under <u>Strickland</u>'s performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" <u>Id.</u> at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential"

level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### c.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of

the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner

"must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

### III. Analysis

Gomez raises three claims in his 28 U.S.C. § 2254 petition: (1) trial counsel ("Counsel") was constitutionally ineffective for failing to seek suppression of Gomez' confession to the police;

(2) Gomez was denied his rights under the Fifth and Fourteenth Amendments to the United States Constitution because he was not indicted by a grand jury or provided a twelve-person jury for his trial; and (3) Gomez was denied his legal rights as a Mexican citizen under the Vienna Convention. Each claim will be addressed separately.

### a. Claim One

Gomez asserts that his statements to the police were made without a proper <u>Miranda</u>[3] warning and were coerced by the interviewing law enforcement officers (Doc. 13 at 7). Specifically, he argues that his <u>Miranda</u> warning was inadequate because it was not made in Spanish and that his question to the police as to whether there was "anybody that speak Spanish" was a clear and unambiguous request for counsel. He claims that he explained to Counsel that he did not understand his rights during his interview with the police and that he "asked [Counsel] to get rid of the statements, because he believed he was tricked by [the police] into making statements that could be bad against him." <u>Id.</u> at 8. Counsel never filed a motion to suppress Gomez'

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) (a custodial defendant's statements made in response to interrogation are admissible at trial only if the defendant was informed of the right to consult with an attorney before and during questioning and of the right against self-incrimination before police questioning, and that the defendant not only understood these rights, but voluntarily waived them).

statements to the police and his confession was used at trial. _Id._

Gomez raised this claim in his Rule 3.850 motion (Ex. 12). The post-conviction court, applying _Strickland_, determined that Counsel could not have made a good-faith motion to suppress his confession because Gomez spoke fluent English (Ex. 15 at 3). The post-conviction court also concluded that, because of the amount of other evidence against him, Gomez could not demonstrate _Strickland_ prejudice:

> In the instant case, the State presented live testimony of the victim as to how the Defendant sexually battered her. The jury also heard the victim, through the child hearsay video testify as to the Defendant's actions on the very day of the event. Dr. Wu testified as to the physical injuries to the victim's vagina and hymen and the pernicious force necessary to cause such injuries. Furthermore, the Defendant's DNA was found in the swabs from the victim's vagina and genital area and from her underwear. Therefore, the Court finds that the Defendant cannot demonstrate prejudice from trial counsel's failure to file a motion to suppress his statements in light of the substantial eye witness and physical evidence against him.

_Id._ at 4 (citations to the record omitted). Florida's Second District Court of Appeal affirmed without a written opinion (Ex. 16). The affirmance of the post-conviction court's ruling is entitled to deference, and the Court must now determine whether any arguments or theories could have supported the state appellate court's conclusions. _Wilson_, 834 F.3d at 1235.

A recording of Gomez' interview with the police was played at
his trial. During the interview, Gomez was given his <u>Miranda</u>
warnings in English, and Gomez affirmed that he understood them
(T. at 335). Initially, Gomez told the police that the victim was
never in his house and that he had dropped the victim and her
mother at their house after he drove them to a doctor's appointment
<u>Id.</u> at 337-39. When the interviewers asked why the victim told a
different story, Gomez admitted that the victim had come back to
his house with him to babysit his grandchild. <u>Id.</u> at 342. He
told the police that the victim had spilled baby milk between her
legs. <u>Id.</u> at 343-45. The interviewers told Gomez that the victim
had given them a different story:

> INTERVIEWER1. There's no sense in not telling
> us the truth right now, okay?
> We know what happened, as I
> told you earlier. We need to
> hear it from you. We want to
> hear why it happened. Okay?
>
> There is probably a mistake or
> a misunderstanding, something
> that, you know, went the wrong
> way. And you're probably very
> sorry for what happened. Is
> that true? Okay. Why don't
> you go ahead and tell us what
> happened.
>
> GOMEZ. Is there anybody that speak
> Spanish?
>
> INTERVIEWER1. I can find someone to speak
> Spanish. It's not going to
> change anything. Do you want
> me to find somebody who speaks
> Spanish?

```
GOMEZ.          My   English.     Can   you
                understand---

INTERVIEWER1.   Yeah.     Very  good.     We
                understand what you're saying.

INTERVIEWER2.   Can you understand us?

GOMEZ.          Yeah.

INTERVIEWER2.   There's  no  problem  with  what
                I'm saying?

GOMEZ.          No.
```

(T. at 347-48).   Thereafter, Gomez admitted that he took the victim to his house on the pretext of babysitting a child.   He then took her to the bedroom of his house, but when he tried to touch her, she screamed.   <u>Id.</u> at 350.   He took the victim to his living room and gave her water and something to eat.   <u>Id.</u>   He opened her shirt and tried to put his penis in her vagina.   <u>Id.</u> at 351-52.   He penetrated the victim's vagina with his finger, and ejaculated on her.   <u>Id.</u> at 351-54, 63.   Gomez admitted covering the victim's mouth with his hand to stop her from crying.   <u>Id.</u> at 359-60.

Upon review of the entire interview transcript, the Court concludes that reasonable counsel could have determined that Gomez spoke sufficient English to understand his <u>Miranda</u> warnings. In addition to telling the police that he understood the <u>Miranda</u> rights (T. at 335), Gomez' responses to the interviewers' questions were appropriate, and he did not show difficulty in explaining, in English, what had happened during his encounter with the victim. At no point did either interviewer appear to have difficulty

understanding Gomez' English.  This point is undergirded by Counsel's affirmation to the trial court that Gomez "spoke fluent English" (T. at 4).  Reasonable competent counsel could have concluded that the available evidence indicated that Gomez was read, and understood, his Miranda rights.

Equally unavailing is Gomez' argument that he requested an attorney after the interview began by asking if anybody there spoke Spanish.  Even after receiving Miranda warnings, once a defendant expresses a desire to have counsel present, he is not subject to further interrogation by law enforcement until counsel is made available.  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). However, the Supreme Court has recognized that a defendant "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, 512 U.S. 452, 459 (1994).  Reasonable competent counsel could have concluded that Gomez' question as to whether anyone spoke Spanish was not an unambiguous request for counsel—particularly given that Gomez was clearly able to communicate sufficiently in English to make such a request.

In addition, as noted by the post-conviction court, the state presented sufficient evidence for Gomez' conviction, even if the confession had been suppressed.  The victim, who was ten years old at the time of the sexual battery, testified at trial that Gomez

had asked her to help take care of his grandchild because his daughter (the grandchild's mother) was sick (T. at 144). The victim agreed, but when she arrived at Gomez' house, nobody was there. Id. Gomez took the victim into his bedroom and attempted to kiss her and to remove her shorts, but she pushed him away. Id. at 147-48. The victim screamed and told Gomez that she wanted some water. Id. at 149. Gomez took her to the living room sofa, and tried to hug her. She pushed him away, but Gomez climbed on top of the victim, and put his hands and penis in her shorts. She tried to scream, but Gomez covered her mouth. She eventually felt something warm and wet come out of Gomez' penis between her legs. Afterwards, Gomez took her home, and told her not to tell her mother what had happened. However, the victim told her mother, who called the police. Id. at 144-58. The jury also heard the victim's video-taped interview with the Child Advocacy Center, made on the day of the sexual battery. Id. at 418-54. The victim's recorded statement mirrored her testimony at trial.

Pediatrician Dr. Michael Wu testified that he examined the victim soon after the attack and found a bruised vagina and a tear on the victim's hymen membrane (T. at 226-28). Dr. Wu also took swabs of the victim's vaginal area. Gomez' DNA was present on the vaginal and genital swabs collected from the victim. Id. at 530-35, 37. Given the amount of evidence against Gomez, independent of his confession, the post-conviction court's conclusion that he

could not demonstrate prejudice was neither contrary to <u>Strickland</u> nor based upon an unreasonable determination of the facts.

Claim One fails on both <u>Strickland</u> prongs and is denied pursuant to 28 U.S.C. § 2254(d).

### b.    Claim Two

Gomez asserts that he had a constitutional right to be indicted by a grand jury and to be tried by a twelve-person jury (Doc. 13 at 11).[4] Gomez admits that this claim was not raised in state court, but urges that he could not have done so because the ground was "just 1-11-16 found out by law clerk to be a value to petitioner[.]" <u>Id.</u> at 31.

Respondent urges that Gomez' failure to raise Claim Two in state court renders it unexhausted and procedurally barred (Doc. 16 at 8-10). The Court agrees. Although Gomez urges that he could not have raised this claim earlier because he did not know about it, this is not an "objective factor external to the defense" that prevented him from raising Claim Two and "which cannot be fairly attributable to his own conduct." <u>See</u> <u>Murray</u>, 477 U.S. at 488. Rather, the factual and legal bases for this claim were plainly available to Gomez at the time of his direct appeal or post-conviction motions. <u>See</u> <u>Harmon v. Barton</u>, 894 F.2d 1268 (11th Cir. 1990). Nor has Gomez presented new, previously

---

[4] Gomez was charged by information and tried by a six person jury (Ex. 1).

unavailable, evidence to support the applicability of the "manifest injustice" exception to the procedural bar.

Even if this claim were exhausted, Gomez would not be entitled to federal habeas relief. See 28 U.S.C. 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). It is well settled that the Fifth Amendment's requirement that a grand jury initiate a prosecution is not applicable to the states. Branzburg v. Hayes, 408 U.S. 665, 688 n. 25 (1972)( "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment") (citing Hurtado v. California, 110 U.S. 516 (1884)). Moreover, the Sixth Amendment's guarantee to a jury trial does not require twelve jurors, even in capital cases. Williams v. Florida, 399 U.S. 78, 99 (1970) ("[T]he 12-man [jury] requirement cannot be regarded as an indispensable component of the Sixth Amendment"). To the extent Gomez urges that he was entitled to a twelve person jury under Florida law, the writ of habeas corpus was not enacted to enforce state-created rights. See Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) ("[W]hether or not petitioner waived his right to a twelve-person jury is a matter of Florida law, not federal constitutional law.").

In addition to being subject to dismissal as procedurally barred, Claim Two is denied on the merits.

### c.  Claim Three

Gomez asserts that he was denied his legal rights under the Vienna Convention, Art. 36, because he did not have consular assistance from Mexico during his criminal proceedings (Doc. 13 at 28).[5]  Again, this claim is unexhausted and procedurally barred because Gomez did not raise it in state court.  To explain his failure to exhaust this claim, Gomez urges that he did not know of its existence until January 11, 2016.  Id. at 31.

In Breard v. Greene, 523 U.S. 371 (1998), the Supreme Court unambiguously held that a habeas petitioner's Vienna Convention claim is procedurally barred in federal court because it is not first raised in the underlying state-court proceedings.  Id. at 375; see also Sanchez-Llamas v. Oregon, 548 U.S. 331, 356 (2006) (upholding Breard, and finding that "the rule of procedural default—which applies even to claimed violations of our Constitution—applies also to Vienna Convention claims") (internal citation omitted).  Gomez has offered no cause for the default of this claim (other than his ignorance of the claim's existence),

---

[5] Article 36 of the Vienna Convention provides that upon arrest, a foreign national has the right to contact the consular post of his home country, and that the arresting authorities must inform the detainee of that rights.  See Vienna Convention on Consular Relations, Art. 36(1)(b).

nor has he presented new, previously unavailable, evidence to support the applicability of the "manifest injustice" exception to the procedural bar. Therefore, the claim must be dismissed as unexhausted.

Claim Three also fails on the merits. 28 U.S.C. § 2254(b)(2). Even if the Vienna Convention confers an individual right to consular assistance following arrest, and "even were [such claims] properly raised and proved, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial." Darby v. Hawk-Sawyer, 405 F.3d 942, 946 (11th Cir. 2005) (quoting Breard, 523 U.S. at 371)). Gomez makes no showing (or allegation) that the arresting officers' failure to contact the Mexican Consulate affected his trial. As noted above, supra, the evidence against Gomez was overwhelming, and his contact with a consulate would not have changed the evidence. Because Gomez does not allege or show how the arresting officers' failure to comply with the Vienna Convention affected his trial, he is not entitled to habeas relief on Claim Three. See Darby, 405 F.3d at 946. In addition to being unexhausted, Claim Three fails on the merits.

Any of Gomez' allegations not specifically addressed herein have been found to be without merit.

## IV. Certificate of Appealability[6]

Gomez is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Gomez must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335–36. Gomez has not made the requisite showing in these circumstances.

Because Gomez is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

---

[6] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Gomez is not entitled to habeas corpus relief, it must now consider whether Gomez is entitled to a certificate of appealability.

1.    The Florida Attorney General is **DISMISSED** from this action as a named Respondent.

2.    Claim One of the amended 28 U.S.C. § 2254 petition for habeas corpus relief filed by Jeremias V. Gomez (Doc. 13) is denied on the merits.   Claims Two and Three are dismissed as unexhausted or, alternatively, denied on the merits.   This case is dismissed with prejudice.

3.    Gomez is **DENIED** a certificate of appealability.

4.    The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___11th___ day of August, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Jeremias V. Gomez
Counsel of Record